1816.    32

CODD
v.
CODD.

CODD *against* CODD.

Whether this Court will grant a writ of *supplicavit,* to protect a married woman from violence threatened to her by her husband, by compelling him to give sureties to keep the peace ? *Quære.*

Such a writ will not be granted where the *menaces,* &c., sworn to, were 8 years before the application for the writ, during which interval the husband was absent from the state, and had lately returned; but the Court, under the circumstances of the case, ordered that the wife should have the exclusive custody, care and direction of the children, and that the husband should not be permitted to visit them except under the direction of one of the masters of the Court.

*May* 31st.    THE bill, which was for a divorce, stated the marriage of the parties in *Ireland,* in 1799; their removal to this state in the same year; that they have five children; that the plaintiff is entitled to a large real estate, and the defendant has no property of his own.   That he is intemperate, and of a violent temper, and treated the plaintiff and her children cruelly; that he has attempted, by threats and coercion, to make her dispose of her property for his use.   That in 1808, they agreed to a separation, and conveyed the property to trustees; and which was since vested in *T. A. Emmet,* by a decree of this Court; that in 1813, the defendant *gave a power of attorney to *T. A. E.* to use his name, &c.   That the defendant left the plaintiff in 1809, and went to the south, and has not since seen or assisted his wife.   That the defendant has now returned, and revoked the power of attorney, and committed adultery, &c.   The bill prayed that the plaintiff might be protected in her person and property, and that the defendant might be restrained from intermeddling with the care and education of the children, and that the marriage might be dissolved.

[*142]

The *petition* accompanying the bill stated, that the plaintiff was apprehensive of personal insult and violence, and injury to her person and papers, and prayed for a writ of *supplicavit,* to protect her person and property, and children from insult and injury pending the suit, and that the defendant be restrained from intermeddling with her real estate, and that the exclusive care of the children be confided to her.   This petition was attended with her affidavit annexed, giving a history of their marriage life, and of successive acts of the defendant of menace, violence, and cruelty, towards her and her children, from 1800 to 1808, when he left the state.   That he returned in *March* last, and that the plaintiff and her children have been obliged to live in a state of

112

seclusion and secrecy, from a dread of his violence.   A cer-       1816.
tificate of Dr. *M'Nevin,* and of *John G. Bogert,* was annexed,
in favor of the fitness of the plaintiff to have charge of her       Codd
children.                                                              v.
                                                                     Codd.

*J. V. N. Yates,* for the plaintiff.

The Chancellor.    There is no act of violence or danger-
ous threat charged since the return of the defendant into
this state, in *March* last, and those which are charged are of
the date of 1808.    There does not appear, then, to be suffi-
cient ground for the extraordinary interference of this Court,
pending the suit, to hold the defendant to bail, *to keep the       [ * 143 ]
peace, under a writ of *supplicavit,* after the lapse of so many
years since the injuries complained of.    In *Clavering's* case,
(2 *P. Wms.* 202.) and in *King* v. *King,* (2 *Ves.* 578.) the
interposition of the Court in this way was where life was
sworn to be in danger.    But I do not mean to say that the
affidavit need to go that length, but the danger to person-
al safety must appear to be serious and imminent.    In
*Heyn's* case, (2 *Ves. & Beame,* 182.) the wife swore to the
apprehension of great bodily injury ; and in the case *ex parte
King,* (*Amb.* 333.) to an assault and battery, and apprehen-
sion of further ill usage.    Still, if a case proper for such a
writ, under the above cases, was made out, I should hesitate
about granting it.    Why should not the party apply to a
justice of the peace to bind the other to his good behavior ?
It was said, in *Clavering's* case, that the master of the rolls
generally refused the writ, and directed the party aggrieved to
justices of the peace.    The application in *Heyn's* case, which
is the only very modern case I have met with, was, by the
exhibition of articles of peace, under the stat. of 21 *Jac.* I.
c. 8., which recognizes such a process of the peace from
chancery, and regulates it ; but that statute has not been
re-enacted here.
     The other part of the prayer of the plaintiff can be granted
without much difficulty, for it is very apparent that the care
and custody of the children should, for the present, be vested
in the plaintiff ; and the act (sess. 38. ch. 221.) gives the
Court special power in such cases.
     The following order was thereupon entered : " *Ordered,*
that the custody, care and education of the children of the
petitioner be, until further order, confided to the said peti-
tioner exclusively, and that the defendant shall not, until further
order, be permitted to visit the said children, except under
the direction of one of the masters of this Court."