LAWRENCE (AMORY v.). See Case No. 336.

LAWRENCE (BANK OF COLUMBIA v.). See·Case No. 872.

LAWRENCE (BELMONT v.). See Case No. 1,280.

LAWRENCE .(BOVING v.). See Cases Nos. 1,711 and 1,712.

## Case No. 8,134.

LAWRENCE et al. v. BOWMAN et al.

[1 McAll. 419.] [1]

Circuit Court, N. D. California. July Term, 1858.

INJUNCTION—TO RESTRAIN PROCEEDINGS AT LAW—NOTICE—RULES OF COURT AS TO ISSUING—UPON WHAT TERMS GRANTED—WHAT PROCEEDINGS ·ENJOINED.

1. Injunctions granted in this court are all special, and grantable only on notice.

2. Due notice is not susceptible of a fixed definition, and must be construed in each case by its circumstances.

3. Under ordinary circumstances, one day's notice is too brief; but there is no fixed limit as to time.

4. Every court of equity has power to mould its rules to meet the purposes of justice.

5. It is not indispensable that a bill for an injunction should contain a prayer for discovery.

6. In the English chancery, where common injunctions are issued. unless special application be made, only proceedings at law subsequent to the judgment are enjoined. Aliter in this country.

7. The form of an injunction in England included a provision that the party at law might proceed to judgment and execution. Aliter in this country.

8. A party who applies for an injunction to enjoin proceedings at law, is not bound to confess judgment at law, as pre-requisite to his obtaining relief in equity.

The bill in this case was exhibited to obtain an injunction to enjoin the trial of a case on the common-law side of this court. A motion is now made on the bill, exhibits, and affidavits, for the issue of an injunction. The facts as set forth in the bill, and the objections urged against the granting of the injunction, are stated in the opinion of the court.

Hall McAllister and E. L. Gould, for complainants.
Johnson & Rose, for defendants.

McALLISTER, Circuit Judge. The bill in this case is exhibited for the purpose of ob-

---

[1] [Reported by Cutler McAllister, Esq.]

taining an injunction to stay the trial of an action of ejectment pending on the common-law side of this court. The trial of the action at law was fixed, by consent of parties, for the 24th day of the current month. On the day previous, an order was obtained from the judge to be served on the plaintiffs, to show cause why an injunction should not issue to stay the proceeding at law until complainant could obtain a hearing on the merits of his bill. As the trial at law was fixed for the succeeding day, and as the judge could grant no injunction without previous notice to the adverse party, he was obliged to act upon the idea that under no circumstances could an injunction issue in any case when applied for on the day preceding the trial of the cause sought to be restrained, and thus leave the complainant without remedy by injunction. The facts stated in the bill on a motion for an injunction, are to be taken as true; and the bill charged gross fraud of a character which it was alleged could not be availed of by the complainant in a court of law. On the following day the parties appeared, and among other grounds taken against the motion by defendants' solicitor, was the briefness of the notice and the laches of complainants in not moving at an earlier moment. The court acquiescing in the propriety of the suggestion as to the briefness of the notice, proffered an extension of time, which was declined by defendants' solicitor, who proceeded to the argument; and the first ground taken against the motion was the laches of the complainant; and the 55th rule of this court was cited as a reason for the denial of this motion. That rule prescribes that special injunctions shall be granted only on due notice to the opposite party. No fixed rule can be recognized as to what shall constitute "due notice." "Due" is a relative term, and must be applied to each case in the exercise of the discretion of the court in view of the particular circumstances. Referring to rules generally, in Poultney v. City of Lafayette, 12 Pet. [37 U. S.] 472, the court say, "Every court of equity possesses the power to mould its rules, in relation to the time and manner of appearing and answering, so as to prevent the rule from working injustice; and it is not only in the power of the court, but it is its duty, to exercise a sound discretion upon this subject." These views apply to all the rules of a court, and if the power to mould them is given, it certainly possesses that of construing them for similar purposes. In ordinary circumstances, the application for an injunction to stay a proceeding at law fixed, as this was, by consent of parties for trial on the following day, will be viewed with suspicion. But in this case there are circumstances which arrest the attention of the court. The parties are differently represented in this case than in the action of law. The solicitors for the re-

spective parties before this court, are not those who are the attorneys of the parties in the action of ejectment. The latter evidently intended to place their defense in a court of law on equitable grounds. Those recently engaged for complainants fear to risk that movement, and now seek the interposition of a court of equity. The question to be decided has never been before this tribunal, and it has been understood that there have been conflicting decisions upon it in the courts of this state. The wavering policy indicated by a change of counsel, produced by such a condition of things disaffirms willful laches by the party, and is a circumstance which the court, in exercising its discretion, should take into consideration, particularly where its action is to affect seriously the rights of the party. If the motion be granted, the injury to defendants would be slight; as the court will give a hearing on the merits at once; if desired by them. I cannot think then, that the delay in filing this bill in view of the circumstances should, per se, prevent all inquiry into the alleged fraud.

I shall proceed to investigate the other objections made to the motion. It is urged, that the bill sets forth no equity; that it prays no discovery; that it admits the legal title of plaintiff, and that defendant only avers an equitable right. It is also urged that by the bill and exhibits, and showing of complainants, the defendant is entitled to judgment and costs, and such damages on an issue to be had which he may recover at law; and that in the ordinary course of chancery proceedings, no injunction can issue save upon the terms that the complainant (defendant in the ejectment suit) suffer a judgment to go against him for the land, and upon the further condition of furnishing bond with sufficient security for the costs and such damages as may be recovered on the issue. These objections involve following propositions, and may be considered together. 1. There is no equity in the bill to restrain the prosecution of the suit at law, because no discovery in, and of it is asked, and the legal title in defendant is admitted. 2. That if an injunction is granted it must be upon terms that the defendants at law submit to a judgment for the land with costs.

By section 254 of the practice act of this state it is enacted, "that an action may be brought by any person in possession by himself or his tenant of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest." The complainants have filed a bill to determine the adverse claim of defendants, who have asserted one in the most emphatic manner, by bringing an action at law for the recovery of the land. The fact that the assertion is made in the form of an action at law, does not deprive complainant at

any time after the claim is asserted, of the right of vindicating his claim in opposition to the adverse one, if the circumstances are such as to authorize this court acting as a court of equity to take cognizance of the case. This section of the practice act is but a reiteration of general principles of equity, and is not without influence on the action of this court in the present case. The language of the statute is unrestricted. The right of a party in possession is not defeated by the fact that the adverse claim is being asserted by an action. The complainant comes within the very letter of the law; and it is doubtful whether any course of chancery practice would authorize this court to consider the fact that the adverse claim was pending in the form of an ejectment suit, a reason to compel complainant to submit to a judgment at law, before he could have extended to him any equitable relief. It may be urged, that the statute of a state cannot affect the jurisdiction of this court, in the exercise of its equity jurisdiction. But this question has been before the supreme court of the United States. In the case of Clark v. Smith, 13 Pet. [38 U. S.] 195, the legislature of Kentucky, had passed a law, the only difference between which and the statute of this state is, that the former authorized one who had both the legal title and possession of real estate, to institute a suit, and described the decree to be made in case of a determination against the adverse claim; whereas the latter gives the right to any one who is in possession, and prescribes no form of decree. The reasoning of the court in that case relative to the statute of Kentucky, is applicable to that of this state. "Kentucky" (say they) "has the undoubted power to regulate and protect individual rights to her soil, and to declare what shall form a cloud on titles; and having so declared, the courts of the United States, by removing such clouds, are only applying an old practice to a new equity created by the legislature, having its origin in the peculiar condition of the country." "The state legislatures certainly have no authority to prescribe the modes and forms of proceeding in the courts of the United States; but having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued as it is in the state courts." [Clark v. Smith] Id. 203. Now, if this suit had been instituted in a state court, not controlled by chancery proceedings, is it probable such tribunal, had it deemed the complainant entitled to the relief asked for, would withhold it until the party would submit to a judgment in the other suit? Apart from all foregoing considerations, arising out of the statute, we will inquire whether the proposition urged by counsel, that, according to the course of chancery proceedings, before an injunction

can issue the complainant must submit to judgment for the land and costs, be correct. The authorities cited by defendant's solicitor, are two cases from the Irish chancery and exchequer courts, one from the English chancery, and two decisions from the state of New York. The two cases from Ireland are cited from Chit. Eq. Dig. p. 2265, §§ 7, 11. The reports from which the notices are taken, are not accessible. These authorities, similar to most insertions in digests, are without a statement of the case, or of the reasons of the court, no authorities cited, and depend for correctness on the conclusions of the digester. Lord Mansfield has said, "There is no cause of greater ambiguity than arguing from cases without distinguishing accurately the grounds upon which they are decided." In every case of a digest cited, the accuracy of the digester has to be relied on. The unreliable character of such authority, if such it can be called, forbids confidence. From what can be gathered from the digest in the first case, that of Home v. Thompson [1 Sausse & S. 615], some fact not mentioned in the case must necessarily differ it from this; for instance, it appears in that case, that if the injunction had been granted the defendant would still have had a trial at law. In the second case,—Redmond v. Goodall [2 Jones, 812],—the digester states, generally, that an injunction to restrain proceedings in ejectment, until the hearing will not be granted except the defendant give a complete judgment at law; and when defendant refused to do so, the injunction was refused. What were the facts, or grounds of decision, are not stated. Was the decision founded upon a rule of court similar to one existing in New York, or based upon the general course of chancery proceedings? Nothing is said upon the point. In the English case (Barnard v. Wallis, 1 Craig & P. 85) cited, three questions were involved in the defense,—two purely equitable and one legal; a common injunction having issued, motion was made to dissolve it, which was granted. This case belongs to a peculiar class, where the defense is composed of both legal and equitable questions, referred to by Daniel, in his treatise on Equity Practice (page 1844). "Sometimes (he says) the question between the parties depends partly upon a legal title, and partly upon an equity which will arise only in the event of that title being decided in one way. In this case, the practice of the court is, to require that the party applying to the court for its interposition, should admit the legal title of the other party, as in the case of giving judgment in ejectment." The case of Barnard v. Wallis belongs to such class of cases, and is totally dissimilar from this. It is true, that the judge, in his opinion, by way of recital alludes to the giving judgment in ejectment suits, as a common case. It was for this reason, perhaps, that the case was cited by counsel as authority. The next case relied on, is that of Carroll v. Sand, 10 Paige,

298; but this was decided with express reference to the 33d rule of chancery in New York. Even that rule contains a proviso, that a party may make special application to the court to restrain all proceedings at law after issue joined. The last case cited is Ham v. Schuyler, 2 Johns. Ch. 141. This is the only authority which sustains the proposition. The whole is comprehended in eight lines, and a single authority cited, that of Hinde's Chancery. Still, it is the opinion of an eminent chancellor, entitled to profound respect; and if the doctrine enunciated had not been repeatedly repudiated, would control the action of this court. This decision was made more than forty years ago, and rests upon an ancient text-writer, who wrote prior to the time of Lord Eldon, who was the founder of the modern practice of injunction. Lord Campbell has said, "Almost all the principles upon which this relief is granted or refused, the terms and conditions upon which it is dissolved, continued, extended, or made perpetual, are to be found in Lord Eldon's judgments alone." 7 Lives of Chan. p. 496. A case was decided in Virginia which enunciates doctrines similar to that announced by Chancellor Kent in above case, which has not been brought to the notice of this court. Warwick v. Norvell, 1 Leigh, 96. The only authority cited is 1 Vern. 120; an ancient authority, obnoxious to the objections heretofore stated as to Hinde's Chancery.

Having commented on each of the authorities cited for this motion, a reference will be made to some which announce a different doctrine. Eden, in his treatise on Injunctions, states the general rule "that injunctions to stay proceedings at law, are granted either before or after the commencement of the action, or to stay proceedings, or after verdict to stay judgment, or after judgment to stay execution, &c." The court, he says, are unwilling to interfere where it "appears, the plaintiff has lain by till after a verdict has taken place, if it is necessary for the obtaining a fair decision. Eden, Inj. (by Waterman) 68, 69. In Hoffman v. Livingston, 1 Johns. Ch. 211, an injunction had been issued to stay proceedings at law, for in that case, the defendant moved to be permitted to go to trial for a portion of the lands not claimed; and the motion for a dissolution of the injunction quoad hoc was refused. In Pyke v. Northwood, 1 Beav. 152, the same doctrine is enunciated. In Apthorpe v. Comstock, Hopk. Ch. 143, the bill was filed for relief against a deed of conveyance of lands alleged to be fraudulent, and for an injunction to restrain the prosecution of certain actions of ejectment brought for the recovery of the lands. No discovery was prayed. Neither plaintiff nor defendant had any knowledge regarding the early transactions out of which the alleged fraudulent deed arose. This case was decided in 1824; and it enunciates the principle that it is a proper head of equity jurisdiction to relieve against fraudulent deeds, and that an injunction, in such a case, is properly auxiliary to the relief sought, as this court takes the whole controversy into its own hands, to prevent double litigation, and give more effectual relief than can be given at common law. In the case of State v. Reed, 4 Har. & McH. 6, 8, 10, 11, ejectment was enjoined before trial, and made perpetual on the hearing. No discovery was prayed in the bill. The next case is that of Duke of Beaufort v. Neeld, decided in the house of lords, on appeal from the chancellor, in the year 1845. Separate opinions were delivered by Cottingham, Brougham, and Campbell. The case is reported in 12 Clark & F. 249. In that case, the Duke of Beaufort was legal owner of the premises; but Mr. Neeld was in possession, obtained under circumstances which gave him a mere equity against the duke; who brought ejectment to recover possession. Mr. Neeld filed his bill to enjoin the further prosecution of the suit. Injunction was granted; but after answer filed, which denied the equity of the bill, the injunction was dissolved by the vice-chancellor, and the ejectment was proceeded in by the plaintiff at law. An appeal was taken from the vice-chancellor to the chancellor, who reversed the decision. An appeal was taken to the house of lords, who decided the vice-chancellor was wrong. Lord Campbell, in delivering the opinion, uses the following language: "With regard to the first injunction (the one issued to restrain the ejectment-suit before trial), I must own that I never entertained a doubt, and down to this moment I have not been able to learn on what ground the vice-chancellor of England dissolved that injunction." Id. 284. In that case, the bill prayed for no discovery in aid of the suit at law. The last authority to which the court will refer, is the case of Gaines v. Nicholson, 9 How. [50 U. S.] 356. The bill in that case, is set out in totidem verbis. No discovery was prayed. The case was an appeal from the decree of the circuit court, U. S., in Mississippi, granting a perpetual injunction to enjoin a pending ejectment-suit on the common-law side of the court. The supreme court admit the regularity of the proceeding. They say, "And, undoubtedly, if the facts thus charged have been established by the pleadings and proofs, a right to such equitable interposition for the relief sought has been made out, and the decree of the court should be upheld." After looking into the pleadings and proofs, they concluded that the charge of fraud had not been made out; and on that ground alone, reversed the decision of the court below. This court has entered more minutely into the authorities in this case by reason of the large interests at stake, and because there has been some conflict in the authorities.

Against the decisions invoked in favor of this motion, from the Irish chancery and exchequer, from New York, and a case from the English chancery, we find two decisions from New York, one from Kentucky, two from

England,—one of them in 1845, by Cottingham, Brougham, and Campbell,—and one by the supreme court of the United States. The weight of authority is decidedly against the principle embodied in the present motion. The court can, therefore, consult the spirit and policy of the statute of this state, without violating any of the rules of chancery proceedings.

The remaining question is, does this case present such equitable claim as to call for the interposition of this court? In England, common injunctions are those which issue of course. The special, are issued only on due notice, and founded on the circumstances of each case as they arise. 3 Daniell, Ch. Prac. 1810. The distinction between them does not exist in the federal courts. In England, the injunction only operates upon the judgment and execution, consequently if a party seeks to stay proceedings at common law before trial, he must make special application on previous notice. The form of a writ of injunction in England always included a provision that the party at law might proceed to judgment and execution. In this country, on every application for an injunction the court has to decide whether the injunction shall issue, and to what extent. In the case at bar, complainants allege they are tenants in fee as tenants in common with the heirs of Stephen Smith, and are in possession of the land; that the defendants have instituted an action at law to eject them from the possession, upon a documentary title they allege to be fraudulent for causes of which they can only avail themselves in a court of equity. Now, all these allegations, until denied, must on this motion be considered as true. They certainly constitute a case which entitles the complainants to the equitable interposition of the court. An injunction must therefore be issued in accordance with the prayer of the bill.