#### AT THE

## NOVEMBER SESSION 1868, IN BOSTON.

———

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. HORACE GRAY, Jr.,
Hon. DWIGHT FOSTER, } Justices.
Hon. JOHN WELLS,
Hon. JAMES D. COLT,

## SUFFOLK COUNTY.

### Laura A. Adams vs. Samuel Adams.

The equity jurisdiction of this court does not warrant the issue of a writ of *supplicavit* on the petition of a wife against her husband, who is guilty of such cruel and abusive treatment of her as would sustain a libel for a divorce from bed and board, and who refuses to support her and their minor child; even although the petitioner has religious and conscientious scruples against applying for a divorce and so obtaining alimony.

PETITION for a writ of *supplicavit*, by the wife of Samuel Adams, setting forth that they were married in 1838, and had three children, two of whom were now of full age, and the third a girl eight years old; that the respondent committed acts of violence upon the person of the petitioner on various days between February 11, 1866, and October 31, 1866, putting her in danger of life and limb, and compelling her to fly from his house; that, in

consequence of his said acts committed on the day last named, he was, upon her complaint, required by the municipal court of the city of Boston to give sureties of the peace, on November 7, 1866 ; that only a few days afterwards he used threatening language to her, and on July 3, 1867, committed another assault upon her; that on July 17, 1867, he again threatened her, and declared that he would not provide food or clothing for her or their minor daughter ; that she repeatedly asked him for money and maintenance for herself and the daughter, which he nevertheless persisted in refusing, and in withholding from them that it was dangerous to her life to live with him ; that his property, with which hers was intermingled, was kept concealed by him, and he was proceeding to waste and remove it, so as to prevent its ever being applied to the support of herself and the daughter; and that the petitioner " has not found heretofore and does not now find liberty in her conscience, and with her religious convictions, to avail herself of the additional and usual statute remedy of divorce, to obtain alimony."

The prayer of the petition was, that, " in tender consideration thereof," and forasmuch as the petitioner was remediless at common law and could have relief only in a court of equity, " where matters of this sort are properly cognizable and relievable, and where the court has ever extended its aid to married women, the feeble and friendless," the court would grant " the ancient writ of *supplicavit* " to bind the respondent, with sureties, to provide for the maintenance of the petitioner, and abstain from personal violence towards her, " and that, having by the writ aforesaid obtained jurisdiction of the said Samuel Adams, the court, in the exercise, according to the ancient method, of the full equity jurisdiction conferred upon it by the legislature, shall, as incident thereto, grant to the petitioner, from the property or earnings of her said husband, maintenance for herself and their said minor child, suitable to their station in life ; " and also for an injunction to restrain the respondent from wasting or concealing his substance.

At the hearing, before *Hoar*, J., the judge found that the petitioner had conscientious scruples against applying for a divorce

that the respondent was guilty of such cruel and abusive treat-
ment towards her as would be sufficient to support a libel for
divorce from bed and board on her behalf; and that any deser-
tion charged upon him was not sustained by the proofs; and
reserved for the determination of the full court the question
whether the petitioner was entitled to any remedy in this pro-
ceeding.

*A. G. Sedgwick,* for the petitioner. 1. A married woman
who has suffered extreme cruelty at the hands of her husband
may have a writ of *supplicavit* for her protection. *Dobbyn's
case,* 3 Ves. & B. 183. Fitzherbert, N. B. 80 E, 81 B. And,
by means of an incidental decree, the court will grant alimony.
*Ball* v. *Montgomery,* 2 Ves. Jr. 195. *Duncan* v. *Duncan,* 19
Ves. 394. 2 Story Eq. (8th ed.) § 1476. Courts of equity are
very liberal in their recognition of the rights of married women.
2 Com. Dig. Chancery, 2 D. 1 Eq. Cas. Ab. 67. *Lambert* v.
*Lambert,* 2 Bro. P. C. 26. An allusion to this process is to be
found in *Codd* v. *Codd,* 2 Johns. Ch. 141, in which Chancellor
Kent suggested a doubt whether the suit could be sustained.
But the point was not at issue, and the opinion of Judge Story
was, that it was " difficult upon the authorities to maintain this
doubt." 2 Story Eq. (8th ed.) § 1476, note 3. The point was
definitely raised and settled in South Carolina in 1809, in a case
almost identical with the one at bar. *Prather* v. *Prather,* 4
Desaus. 33.

2. The present is a case where there is no remedy at law.
There is indeed a right, at law, to support; but the only means
of enforcing it is by using the husband's credit. In cases where
he has no credit, though he may have ample means of support
and even be living in luxury, the wife has no remedy unless it
be in equity. But not only has the wife a right; the husband
has a corresponding duty; and unless the writ of *supplicavit* is
permitted to issue, there is no means of enforcing that duty.
The process therefore has two recommendations: it obliges per-
formance of a duty which the law enjoins but cannot enforce;
and it gives life to a right which in theory the law supposes to
exist, but practically denies. See *Prather* v. *Prather,* 4 Desaus.
35.

3. Although the process of *supplicavit* has not been common in America, the principle on which the incidental decree for alimony is grounded is fully recognized by various states, in permitting, either by statute or in chancery, a decree for alimony without divorce. In these states, the wife files a bill alleging failure on the part of the husband to support, and prays simply for alimony. *Purcell* v. *Purcell,* 4 Hen. & Munf. 507. *Paterson* v. *Paterson,* 1 Halst. Ch. 389. *Glover* v. *Glover,* 16 Alab. 440. *Dunnock* v. *Dunnock,* 3 Maryl. Ch. 140. *Thompson* v. *Thompson,* 10 Rich. Eq. 416. *Simpson* v. *Simpson,* 31 Missouri, 24. *Almond* v. *Almond,* 4 Rand. 662. *Anon.* 1 Hayw. (No. Ca.) 347. And in such cases the decree may be obtained on allegations of cruelty simply. *Taylor* v. *Taylor,* 4 Desaus. 167. *Almond* v. *Almond,* 4 Rand. 662. *Lockridge* v. *Lockridge,* 3 Dana, 28. See further 2 Story Eq. (8th ed.) § 1423 *a.* Alimony *pendente lite* may be alimony without divorce. Equity will grant maintenance to the wife, even without a divorce, in cases of extreme cruelty, where there is any property on which it can lay its hands. *Oxenden* v. *Oxenden,* 2 Vern. 493. *Williams* v. *Callow,* Ib. 752. *Lambert* v. *Lambert,* 2 Bro. P. C. 18. If it be said that these last were cases of a decree for specific performance, we answer that that is what we ask in the case at bar, — specific performance of the contract to support.

4. One objection urged against the process is, that it is obsolete. But it surely is no more so than the writ of *ne exeat regno* was in 1849, when it was first granted by this court in *Rice* v. *Hale,* 5 Cush. 238. The principle of the process is not obsolete; because it is in full force in those states which have sanctioned the proceeding mentioned above of decreeing alimony without divorce. And can it be said that a writ granted in 1809 is obsolete today? That it is obsolete in England is only shown by the absence of evidence that it is in use, which is not conclusive. It was not obsolete at the beginning of this century; and shall it be said that a right of action died in fifty years? There are obvious reasons why the process should be rarely used. In almost all instances a divorce is preferred. There remain however, a small class of cases, such as the one at bar, where

religious scruples prevent a divorce. In such cases, a bill to obtain alimony without a divorce would be objected to on the ground of novelty; just as this petition for *supplicavit* is objected to on the ground of obsoleteness; and if both objections are valid, the result is, that a strong religious feeling of the sanctity of marriage may prevent a wife from obtaining the rights which marriage was to bring.

Another objection urged is, that it is against public policy. But the law looks with no favor upon divorce; and the growing facility of divorce in certain states seems to show the value of any process which, like *supplicavit,* recognizes the solemnity of the marriage contract, and enforces its obligations.

A third objection is, that divorce affords a complete remedy. But, even supposing that religious scruples do not exist, there may be many other reasons for not desiring even a divorce from bed and board. Such a case would arise if the wife, hoping for a return of her husband's affections, were afraid lest a divorce, of whatsoever kind, might prevent her hope from being fulfilled.

It is finally objected that the granting of the process will breed suits of a similar kind; that all Roman Catholics who have domestic difficulties will prefer this remedy; and that the court will be overcrowded with business from which it was the intention of the legislature to free it. But there is no evidence that it was ever a frequent process in England, where, if anywhere, it would have been common; nor does it appear that in those states in which the independent bill for alimony is entertained that practice is anything but rare. South Carolina has no divorce law; but no fear seems to be felt there that *suppli cavit* will become an every day remedy.

*A. R. Brown,* (*E. A. Alger* with him,) for the respondent.

CHAPMAN, C. J. This is a petition for a writ of *supplicavit,* addressed to us as a court of chancery. The petitioner alleges and proves such acts as would be sufficient to support a libel for divorce from bed and board for his cruel and abusive treatment of her. She also alleges and proves that she has conscientious scruples against applying for a divorce.

No writ of *supplicavit* has ever issued from this court. The

novelty of the application makes it necessary to examine into the origin and character of the process. A full account of it is given in Fitzherbert, N. B. 79. It appears that it was a writ *de securitate pacis.* It might be sued out by any person, upon proper petition and oath, requiring another, who had threatened him, to keep the peace. A wife might have it against her husband. But after the St. 1 Edw. III. *c.* 16, other forms of writ were resorted to. Upon security being given by the defendant, he might have a *supersedeas.*

The form of the writ was, to compel the husband, "that he shall well and honestly treat and govern the aforesaid B., (his wife,) and that he shall not do nor procure to be done any damage or evil to her of her body, otherwise than what reasonablv belongs to her husband for the purpose of the government and chastisement of his wife lawfully." See also Bac. Ab. Surety of the Peace, E. The course of proceeding was, to arrest the defendant on the writ and bring him before the sheriff, or a justice of the peace, when a recognizance was taken in a reasonable sum, with sureties, and thereupon he was discharged by a writ of *supersedeas.* If nothing new appeared, it was the practice, both in chancery and in the king's bench, to discharge the articles of the peace at the end of a year. *Baynum* v. *Baynum,* Ambl. 63. *Ex parte King,* Ib. 240. But if the ill usage continued, a discharge was refused. *Ex parte King,* Ib. 333. The court had only power to bind the husband to his behavior, not to remove his wife from him. *The King* v. *Lord Lee,* 2 Lev. 128. There are several reported cases in modern times where sureties of the peace were required. *Tunnicliff's case,* 1 Jac. & Walk. 348. *Heyn's case,* 2 Ves. & B. 182. *Dobbyn's case,* 3 Ves. & B. 183.

The object of the writ is not to provide for a permanent maintenance for the wife. In *Head* v. *Head,* 3 Atk. 547, Lord Hardwicke said the security was taken upon the supposition that the parties would live together. In *Duncan* v. *Duncan,* 19 Ves. 394 Sir William Grant said it was contrary to the established doctrine, that a married woman should be a plaintiff in the court of chancery for a separate maintenance; that it was always inci-

dental to some other matter that she became entitled to a sep-arate provision. He instances the case of a *supplicavit* for sure-ties of the peace, if it became necessary that she should live apart. See also *Ball* v. *Montgomery*, 2 Ves. Jr. 195. But it is not stated that the provision is to be permanent; and the re-marks are mere *dicta.* But in Clancy on Married Women, 454, it is said that the writ is always sued out upon the supposition that the husband and wife are to cohabit, as will appear from the language and object of the writ itself; and he asks, " How can a court award a separate maintenance to a wife, upon a proceeding which she has recourse to upon the idea that she is to live with her husband ? " In *Codd* v. *Codd*, 2 Johns. Ch. 141, Chancellor Kent doubted his power to grant the writ, even in a proper case, and asked why the party should not apply to a justice of the peace to bind the other to his good behavior. The only case cited in which it appears to have been granted in this country is *Prather* v. *Prather*, 4 Desaus. 33.

In 2 Story Eq. (8th ed.) § 1423, it is said that there is no modern instance of a decree of separate maintenance on *suppli-cavit.* No such instance is referred to in the argument in this case, nor have we been able to find one.

In *Clavering's case*, 2 P. W. 202, a motion for *supplicavit* was refused, and it is remarked that the master of the rolls generally refuses to grant this writ, directing the party to apply elsewhere, namely, to the justices of the peace.

In its nature it is a criminal proceeding; and this is a good reason why it should have gone into disuse, for it does not seem to be desirable that courts of chancery should retain this small modicum of criminal jurisdiction. The provisions of the Gen. Sts. *c.* 113, which prescribe chancery jurisdiction and regulate chancery practice in this Commonwealth, render it clear that the legislature did not intend to include criminal cases. And *c.* 169, which regulates the process by which parties may be required to give sureties to keep the peace, limits the term of the recogni-zance to six months. This limitation would substantially de-stroy the value of a writ of *supplicavit*. And though the statute authorizes this court, as well as the inferior courts, to take such

recognizances, yet it is to be so interpreted as to be consistent with the system of leaving all criminal matters, except capita. cases, to be tried in the lower courts.

But it never was a direct object of the writ of *supplicavit* to give alimony. Its purpose was to protect the complaining party from personal violence and abuse. Sometimes it was thought necessary to make a temporary provision for a wife who had left her husband because it was not safe to live with him, until he would receive her back. An attempt to use the process for the direct purpose of obtaining alimony to enable her to have a permanent separate maintenance would have been regarded as an abuse.

Yet the obvious purpose of the complaint in this case is, to make this court an instrument by which a woman, who has ground for a divorce *a mensâ* because of ill treatment, may obtain a permanent separate maintenance, and still preserve the marriage relation. The petition enumerates the acts of abuse, avers that the petitioner has asked her husband for money and maintenance for herself and child, which he refuses to furnish, and avers that it is dangerous to her life to live with him. It alleges that he is concealing and wasting his property, and that she and her child are in danger of being left without support. It prays that he may be required to find sureties of the peace, and that, as incident thereto, there shall be granted to her, from his property or earnings, a suitable maintenance for herself and child, and that a writ of injunction may be granted, restraining him from conveying or concealing his property.

It alleges that she has left him, but does not intimate a willingness or desire to return. Of course, the only use of a recognizance to keep the peace would be to prevent him from molesting her while living separately. The form of the ancient writ for which she asks would hardly be approved of by her or by the court.

But she puts her case upon the ground that she has conscientious scruples against the remedy which is provided by law for married women who desire to be permanently separated from their husbands, namely, an application for a divorce. Such

scruples may always justify a party in declining to avail herself of any legal remedy which the law has provided; or in applying to the legislature to establish a new remedy by statute. But the judicial department of the government has not power to make law; it can only declare what the law is, in application to cases as they are properly brought before it. We could not, for example, give to a party a remedy in equity on the ground that he had conscientious scruples against bringing an action of tort. For this reason, we cannot take notice of the conscientious scruples of the petitioner in respect to any remedy which the legislature has provided for her.     *Petition dismissed.*