## HENWOOD vs. JARVIS AND SCHAFER.

1. When an injunction has been granted upon a bill filed merely for discovery in aid of a defence at law, it will be dissolved as soon as the answer is perfected. But the rule does not apply to a case where the bill is filed for relief, and discovery incidental to the granting thereof.

2. Though this court will respect the intention of the legislature in providing for the institution of summary proceedings for the trial of rights, and in all proper cases leave parties to their remedy at law, yet it will not, in a proper case, refuse equitable relief because the legislature has, in its wisdom, made these proceedings summary.

3. Equity will not refuse to interpose when the remedy is more complete and perfect in equity than at law.

4. To restrain the assertion of doubtful rights in a manner productive of irreparable damage, and to prevent injury to a person from the doubtful title of others, are among the legitimate functions of a court of equity.

5. Where, upon a bill to restrain proceedings at law, the question is one of fraud, and the interests involved are of great magnitude, and the answers do not satisfy the mind of the court that injustice would not be done the complainant if he were not permitted to pursue his application for relief here, this court will not remit him to a court of law when the question can be better examined in equity, especially when the proceeding in the law court is of a summary character, and the injury which may be inflicted upon him if fraud be permitted to prevail, will be irreparable.

6. Whether the defendant has been prejudiced by delay in commencing suit against him, enters into the question whether the complainant has, by his delay, forfeited his claim to the consideration of equity.

7. Where the complainant has a distinct ground of equitable relief, aside from his defence at law, he will not be obliged to abandon his legal defence by confessing judgment before equity will enjoin the suit at law.

8. The whole matter of terms on granting or continuing an injunction, is in the discretion of the court.

---

Bill for relief. On motion to dissolve injunction restraining the defendant Schafer from prosecuting a suit at law for possession of premises demised by Jarvis to Henwood. On bill and answers.

*Mr. R. Gilchrist*, for motion.

*Mr. J. F. McGee* and *Mr. L. Abbett*, *contra*.

THE CHANCELLOR.

In 1869, Jarvis leased to Henwood, for a term of five years from the 1st of January, 1870, with privilege of renewal for five years more, certain extensive and valuable buildings and premises in Jersey City, then owned by the former, to be used for the storage and inspection of tobacco, or for general storage purposes only. The lease contained a provision that the lessor might terminate it upon a sale of the premises, on giving six months' previous notice in writing, to the lessee, his representatives or assigns, who had the right to terminate or surrender it on like notice. In 1874, the lease, which had been in some respects modified, was, in accordance with its provisions in that behalf, renewed for five years from the 1st of January, 1875. On the 5th of November, 1875, Jarvis entered into a contract, in writing, with the defendant Schafer, for the sale of the premises to the latter, the deed to be delivered on the 10th of that month, for the consideration of $225,000, of which $25,000 were to be paid on the delivery of the deed, and the rest secured only by mortgage on the premises, (without personal liability on the part of Schafer for the mortgage debt, or any part thereof,) payable with interest at five per cent. per annum, in ten years from date, with an option to Schafer or his heirs or assigns to pay the principal before the end of that period, on notice. On the 10th of November, the deed and mortgage were delivered, and on the next day both were duly recorded in the register's office of Hudson county. On the 5th of November, the day on which the contract for sale was made, Jarvis served upon Henwood a notice in writing, that he had made a sale of the premises, which was to be consummated as soon as the deed of conveyance for the property could be prepared and executed, and that the lease would be determined at the expiration of six months after the delivery of the notice to

Henwood, who would thereupon be required to surrender the premises to Schafer, the purchaser and owner. At the foot of the notice was one signed by Schafer, requiring Henwood to deliver up to him possession at the end of six months from the time of the delivery of the notice. On the 6th of May, 1876, Henwood still retaining possession, Schafer made a demand on him, in writing, for possession, with a notification that he would, if possession were not given, hold him liable for double the yearly value of the property, and that as soon as he might be able to do so, he would bring an action of ejectment, and also would, if entitled thereto, hold him responsible for all damages consequent upon his refusal to surrender possession. On the 11th of the same month he served on him another demand and notice of like character and purport. Henwood still holding possession, Schafer, on the 22d of May, instituted a suit for possession, before a justice of the peace in Jersey City. The suit was, in a few days after it was begun, carried, by the plaintiff therein, to the Circuit Court of Hudson county, under the provisions of the twentieth section of the act "concerning landlords and tenants." *Revision* 430. The bill attacks the sale alleged to have been made by Jarvis to Schafer, denies its *bona fides*, and claims that it was merely a contrivance fraudulently designed by the defendants to deprive the complainant of his term, and oust him from the premises. It prays an answer not under oath, an injunction against the suit at law, and any other act, action or proceeding to obtain possession, and that the deed may be declared void as against the complainant's lease and term thereunder. The bill sets up a claim under an agreement made between the complainant and Jarvis before the renewal, by which the former, in case of the termination of the lease during the term, by notice on a sale of the premises, was to be entitled to $50,000 of the purchase money, if the property should be sold for $600,000 or more, and to a proportionate sum if the sale should be for a smaller price than $600,000. Jarvis insists that the claim is groundless, and that the agreement expired with the original

term, and was not continued by the renewal. Inasmuch as the bill assails the sale and conveyance to Schafer as fraudulent, and alleges that the property has not, in fact, been sold to him, and prays relief accordingly, and seeks no relief under or in pursuance of the agreement just referred to, or based in any way upon it, the claim will be left wholly out of consideration.

The bill is filed for relief against the sale, and for discovery as incidental thereto. It attacks that transaction as a fraudulent contrivance, designed merely as a means of unjustly depriving the complainant of his term, and of inflicting irreparable injury upon him to a very great extent. Denying the *bona fides* of the defendants, it asks that they may be required to answer, (though not under oath,) and that they may be enjoined from taking any steps towards ousting the complainant from the premises. The defendants having answered the bill, their counsel insists that the injunction should be dissolved as of course, on the ground that they have made discovery. It is true, that when an injunction has been granted upon a bill filed merely for discovery, in aid of a defence at law, it will be dissolved as soon as the answer is perfected. *King* v. *Clark*, 3 *Paige* 76 ; *Grafton* v. *Brady*, 3 *Halst. Ch.* 79. In such case, the only object of the bill is to obtain the defendant's answer, to be used on the trial at law, and there can be no ground for restraining the defendant from proceeding at law after the discovery has been obtained. The bill in this case, however, is not such a bill. The rule, therefore, does not apply, and this motion is to be determined by the rules applicable to cases where the bill is filed for relief, and discovery incidental to the granting thereof. The question, therefore, is, whether the equity of the bill has been answered.

The defendants have answered on oath, and, of course, on this motion, are entitled to the benefit of their oaths. The facts relied upon in the bill as the ground for impeaching the alleged sale from Jarvis to Schafer are, with perhaps two exceptions, admitted in the answers. The exceptions are, the conversation which the complainant says took place between

him and Schafer on the 30th of November, 1875, on the payment by him of the rent, and the conversation between him and Jarvis previously thereto, in which he says the latter directed him to pay the rent to Schafer. The facts which are not denied are, that Jarvis is a man in easy pecuniary circumstances; that in the suit between him and the complainant in this court in the beginning of the year 1875, (*Jarvis* v. *Henwood,* 10 *C. E. Green* 460,) he swore that the premises were worth at least $300,000; that Schafer, at the time of the alleged sale, was one of the firm of bankers with whom Jarvis then did his banking business; that the price at which Jarvis claims to have sold the property is $225,000, $200,000 of which were secured only by a mortgage on the property, without any personal liability or security whatever, payable in ten years, (though Schafer has the option to pay sooner on giving notice,) with interest at five per cent. per annum, and that Schafer resides in New York and is a banker there. Jarvis, in his answer, gives as his reason for selling the property his desire to get the cash, $25,000, which, he says, he received on account of the purchase, and the mortgage money, $200,000, when it should be payable; and he adds that he "was willing and desirous of selling to any one by reason of the trouble and annoyance to which he was subjected by the complainant." He denies that the sale was made with the purpose of depriving the complainant of his term or of harassing him or doing him any injury. He says that $225,000 was as high a price as he could get for the property, and that he considers the sale a good and fair one, for a fair and adequate price, and that he accepted the mortgage for $200,000, without personal liability for the debt, and accepted five per cent. as the rate of interest, because he could do no better, Schafer refusing to agree to a higher rate of interest or to become personally liable for the $200,000, or any part of it. Schafer gives as his reason for refusing to become personally liable for the mortgage money, that he "never will, if he can help it, incur a personal obligation to pay money, for real estate especially, the extent of the depreciation of which no one can foresee;"

and he says the reason why the interest was fixed at five per cent. was, because he would not pay any more. Notwithstanding the denial of fraud and of all intention to deprive the complainant of his term, it appears that on the very day of the alleged sale, and five days before the deed was to be delivered, notice to quit was given to the complainant. The disposition of Jarvis towards the latter is shown in his answer. He says he, was, in view of the trouble and annoyance he had been subjected to by the complainant, " willing and desirous of selling the property to any one." What the trouble and annoyance were, does not appear, except as he refers, in that connection, to the suit in this court above mentioned. It does appear that the rent was promptly paid. That Jarvis was dissatisfied with Henwood as his tenant, is abundantly evident. Between the time of the suit above referred to, and the date of the contract of sale, was a period of less than a year. At the former date, Jarvis valued the property at $300,000 at least. At the latter, according to his statement, he was quite willing to take $225,000 for it, and that too, on terms extraordinary in their liberality ; and noticeably so, when it is considered that he received only about ten per cent. of the purchase money in cash, with a mortgage, at a rate of interest unusually low, for the rest, without personal security or responsibility of any kind, and not becoming due before the end of ten years. It does not appear that he ever attempted or offered to sell the property to any one but Schafer, or in any way sought to get a higher price than $225,000 for it. He was under no obligation, indeed, to sell the property to Henwood, nor to offer it to him, but it was probably worth more to the latter than to any one else, and an offer to sell it to him, or an invitation for an offer from him, would have been an important fact in determining the bona fides of the transaction under consideration, and would have been quite in accordance with the conduct of business men in such matters. Jarvis was, it is admitted, under no necessity to sell, and it does not appear that Schafer was desirous of buying. Indeed, the terms of the alleged sale indicate the very reverse. Shafer was in no

business which would make it desirable to him to own the property; indeed, he was unwilling to buy it even at the price of $225,000, except on the exceedingly liberal terms agreed on between him and Jarvis. Without, so far as appears, seeking for any other purchaser, Jarvis entered into a contract to sell the property to his banker (between whom and himself, it may be assumed that the confidential relations usual in such cases existed,) at a price and on terms which provoke the gravest suspicion as to the *bona fides* of the transaction. The rent paid by Henwood, under the renewal, was $18,000 a year, out of which Jarvis had to pay the taxes and insurance, amounting, it is said, to about $6000. His income from the proceeds of the sale he states at $11,750, which sum is the aggregate of the interest at seven per cent. on $25,000, and the interest at five per cent. on $200,000. It may be that $225,000 were a full price for the property, even on the liberal terms on which it is said to have been sold, and that Jarvis did, indeed, offer the property to others; or it may be that he was willing, in his disgust with the property in consequence of the result of the suit in this court above referred to, to be rid of it, even at the loss of $75,000; but none of these things satisfactorily appear. Schafer has not leased the premises. The business of the complainant conducted there is very extensive. He is an inspector of tobacco, and the buildings are used by him for the storage of that commodity packed in hogsheads, of which they will hold about ten thousand. The average number kept there on storage by the complainant is seventy-five hundred; the amount varying according to the season of the year. The tobacco belongs to numerous parties, many of whom he swears are unknown to him, (some residing out of this country,) his certificates of the receipt of the tobacco passing from hand to hand as evidence of ownership among dealers. To compel him to remove from the premises would destroy his business, and inflict on him irreparable injury, while Schafer can be protected against loss from the continuance of the injunction.

But it is urged by the defendants' counsel that the com-

plainant may have adequate relief at law; that the question of the *bona fides* of the sale may be tried there. The defence, indeed, may be made at law, (*Muzzy* v. *Allen*, 1 *Dutcher* 471,) but the proceeding at law is of a summary character, and, though this court will, of course, respect the intention of the legislature in providing for the institution of such proceedings, and, in all proper cases, leave parties to their remedy at law, yet it will not, in a proper case, refuse equitable relief, because the legislature has, in its wisdom, made these proceedings summary. *Forrester* v. *Wilson*, 1 *Duer* 624; *Duigan* v. *Hogan*, 1 *Bosw.* 645. The very fact that the proceedings are summary, and therefore may not be as favorable to the making of a defence which is within the jurisdiction of this court, may be a sufficient reason for the interference of this court. In *Bean* v. *Pettingill*, 2 *Abb. Pr. Rep.* (*N. S.*) 58, and *S. C.*, 7 *Robertson* 7, interference by injunction was refused to stay summary proceedings of this character, but it was on the ground that the claim on which relief was sought could be as well and effectively set up at law as in equity. Equity will not refuse to interpose when the remedy is more complete and perfect in equity than at law. *Duncombe* v. *Greenacre*, 6 *Jur.* (*N. S.*) 987; *Meux* v. *Smith*, 11 *Sim.* 410. The great purpose of a court of equity, in assuming jurisdiction to restrain proceedings at law, is to afford a more plain, adequate and complete remedy for the wrong contemplated than the party can have at law. The bill in this case seeks relief on the ground of fraud. It asks relief, not only from the existing suit at law, but from any other step or proceeding on the part of the defendants to obtain possession. To restrain the assertion of doubtful rights in a manner productive of irreparable damage, and to prevent injury to a person from the doubtful title of others, are among the legitimate functions of a court of equity. *Mitf. Pl.* 5. Said Lord Justice Turner in *Daires* v. *Stainbank*, 6 *D., M. & G.* 679, 696, in answer to an argument under similar circumstances, that there was a defence at law. "It is a fraud in the eye of the law in a creditor to proceed at law against a surety after he has agreed with the principal .

debtor to enlarge the time for payment, and this court relieves against the fraud. The mere fact that a 'court of law, if called upon to do so, might possibly exercise concurrent jurisdiction in such a case, cannot defeat the jurisdiction of this court to interfere. If, indeed, the matters had been pleaded at law, and the court of law had entertained the plea, and adjudicated upon it, the case might have been different; but it is clear that, in this case, the court of law has not entertained the question, and the bill was filed before the trial of the action." It would not be in accordance with the practice of this court, in such a case as this, where the question is one of fraud, and the interests involved are of great magnitude, and the answers do not satisfy the mind of the court that injustice would not be done to the complainant if he were not permitted to pursue his application for relief in this court, to send him away from this tribunal, where the question can be better examined than in a court of law, especially when the proceeding in that court is of a summary character, and the injury which may be inflicted upon him, if fraud be permitted to prevail, will be irreparable.

The defendants' counsel, on the argument, insisted that the complainant had been guilty of such laches as to have forfeited his claim to the consideration of this court. It is true, that over six months elapsed from the time when the complainant was first apprised of the alleged sale and the time of filing the bill, but no objection is made in the answers, or either of them, on that score. But apart from that, it does not appear, and it is not alleged that the defendants, or either of them, have been prejudiced by his delay to make application to this court in the premises. He appears to have regularly paid his rent to Schafer, and always under protest against the *bona fides* of the alleged sale, and as soon as proceedings for possession were commenced against him before the justice of the peace, he applied to this court for relief. The objection cannot avail the defendants.

The motion to dissolve will be denied, and the modification of the injunction permitting Schafer to keep the suit in the

Circuit Court alive by adjournment, will be vacated. The complainant will be required to execute a bond with sufficient sureties to the defendant Schafer, in a penalty equal to double rent of the premises for two years, with condition according to the forty-fifth rule of this court, to pay to him all such damages and costs as may be awarded to him either at law or in this court, in case of the decision of this cause against the complainant. The defendants' counsel insists that it is the rule of this court, that where one comes into equity for relief against proceedings at law, and seeks on equitable grounds to enjoin such proceedings, the relief will be granted only on condition of his first confessing judgment at law, and that, therefore, if the injunction be continued, it should be on terms that the complainant consent that judgment be entered against him in the proceedings for possession. Such terms are sometimes imposed in granting injunctions to stay proceedings at law, where the complainant, having no defence at law, applies for relief on the ground of equity alone. In such cases they are imposed in order that the plaintiff in the action at law may not be delayed in obtaining judgment, inasmuch as the defendant has no defence at law. *Turner* v. *B. Miss. Union*, 5 *McLean* 349, 350. But see *Lawrence* v. *Bowman*, 1 *Mc-All.* 419. The rule in England is thus laid down by Kerr: " The terms on which an injunction is granted are in each case a question for the discretion of the court, but the general principle upon which the court proceeds is, to put the party applying upon such terms as will enable the court to do justice to the party restrained, in the event of his failing to make out his case at the hearing." *Kerr on Inj.* 18. But it is difficult to discover a good reason for compelling a party, as terms on which alone the protection of equity will be afforded him, to abandon what he may be advised is a good defence at law. In *Barnard* v. *Wallis, Craig & Phill.* 85, cited on the argument, parties in possession of an easement, filed a bill to restrain the owner of the land from proceeding with an action of trespass, alleging three grounds of defence to the action, two of which were legal and the other equitable. The Court of Chancery did

not require the complainant to confess judgment, but allowed the action to proceed to judgment, inasmuch as, if the legal grounds of defence should be sustained, the interposition of the Court of Chancery would be unnecessary, and if they should not be sustained, and it should therefore become necessary to entertain the equitable question, it would know what amount of damages a jury had assessed as a compensation for the easement, and be able to secure that amount until the hearing of the cause. *Firmstone* v. *De Camp*, 2 *C. E. Green* 317, also cited in this connection, is not in point. The injunction there was modified, indeed, so as to permit the defendant to proceed with his suit at law, if he should deem such course advisable, but it was on the final hearing, and it restrained him from setting up, at the trial, any other meaning of the contract in question than the one indicated in the opinion. It was the final disposition of the cause. *Melick* v. *Drake*, 6 *Paige* 470, also cited on the argument, was expressly decided under the thirty-third rule of the then Court of Chancery of New York, which was as follows : " When an injunction bill is filed to stay proceedings in a suit at law, the complainant shall state, in his bill, the situation of such suit, and whether an issue is joined or a verdict or judgment obtained therein. If no issue has been joined or judgment obtained in the suit at law, and the bill is not a mere bill of discovery, or to aid the defence in the suit at law, the Vice-Chancellor or master on whose certificate the injunction is granted, shall direct a provision to be inserted in the injunction, that the defendant be at liberty to proceed to judgment at law without prejudice to the equitable rights of the complainant, notwithstanding the injunction. But the complainant in such cases may, on application to the court and sufficient cause shown, obtain an absolute injunction to stay all proceedings in the suit at law, or all proceedings after issue joined, in the discretion of the court." In that case, an injunction to restrain all proceedings at law was sustained. The Chancellor said : " In this case I think, from the fiat of the Vice-Chancellor endorsed on the bill, that he considered himself as acting in the char-

acter of judge having jurisdiction of the cause, and with power to exercise his discretion as to the extent of the injunction, and not as acting in the character of an injunction master merely. He recites the fact that it appears to him that a discovery is necessary to aid the defence in the suit at law, and then concludes with a fiat for an injunction to restrain all proceedings in the suit at law. And as he had jurisdiction and authority to make such an order in the present case, according to the course and practice of the court, it was the duty of the clerk to enter the order and issue the injunction accordingly. The injunction was therefore regular, and the order appealed from was correct, and must be affirmed, with costs." That case, therefore, does not sustain the position of the defendants' counsel. The forty-fifth rule of this court recognizes the practice of staying proceedings at law in ejectment, at the discretion of the Chancellor. It provides for the imposition of no terms except the giving of a bond in case issue shall have been joined in the suit at law. Where the complainant has a distinct ground of equitable relief, aside from his defence at law, he will not be obliged to abandon his legal defence by confessing judgment before equity will enjoin the suit at law. *Warwick* v. *Nowell*, 1 *Rob.* (*Va.*) 308; *High on Injunctions*, § 52; *Gaines* v. *Nicholson*, 9 *How.* 356; *Pyke* v. *Northwood*, 1 *Beav.* 152; *Lawrence* v. *Bowman, ubi supra.* The practice in this court is in accordance with this view of the subject. *Trenton Banking Co.* v. *McKelway*, 4 *Halst. Ch.* 84; *Morris Canal, &c.,* v. *Dennis*, 1 *Beas.* 249; *Camden and Amboy R. R. Co.* v. *Stewart*, 3 *C. E. Green* 489.

The whole matter of terms on granting or continuing an injunction, is in the discretion of the court.