IN THE MATTER OF THE APPLICATION OF EDMUND P. DOLE FOR A WRIT OF PROHIBITION AGAINST GEORGE D. GEAR, SECOND JUDGE OF THE CIRCUIT COURT OF THE FIRST CIRCUIT, TERRITORY OF HAWAII, AND ELEANOR G. DOLE.

ORIGINAL.

SUBMITTED NOVEMBER 19, 1902.    DECIDED JANUARY 21, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Equity may grant maintenance to a wife without special statutory authority and independently of a suit for divorce or separation, on the ground that the remedy at law through the pledging of the husband's credit for necessaries is inadequate.

This being deemed the better and more prevalent view at present in the United States, the court is not required to follow the old English rule to the contrary.

The old English rule need not be followed, for the reasons stated in the opinion, although (1) our statute (Civ. 1., § 1498) defining equity jurisdiction was copied from the statutes of Massachusetts where the old English rule is regarded as the correct rule, and (2) our statute (*Id.* § 1109) adopts the common law, as ascertained by English and American decisions, and (3) the legislature has made express provision for alimony in connection with divorce and separation (*Id.* Ch. 125).

Temporary maintenance may be granted in an equity suit for maintenance.

An order for such temporary maintenance is appealable.

The Circuit Judge is without jurisdiction to enforce such order by contempt proceedings pending an appeal.

Under a prayer for a writ of prohibition against further proceedings in a cause, a writ may be allowed against further proceedings in one branch of the cause and denied as to the remainder.

The rule that the writ will not be granted unless the question of jurisdiction has first been presented to the lower court, does not apply to summary proceedings of a quasi-criminal nature, as in cases of contempt.

OPINION OF THE COURT BY FREAR, C.J.

(GALBRAITH, J., DISSENTING IN PART.)

The respondent, Eleanor G. Dole, by her next friend, brought a bill in equity for maintenance against her husband, the petitioner Edmund P. Dole, before the other respondent, the Circuit Judge, and incidentally prayed for costs, counsel fee and temporary maintenance. After a hearing on a demurrer to the bill for want of jurisdiction and on an order to show cause why temporary maintenance, &c., should not be granted, the Judge held that equity had jurisdiction and ordered the petitioner herein to pay certain sums for costs of court, counsel fees and temporary maintenance within a specified time. From that order the petitioner herein appealed to this court before the expiration of the specified time and did not make the prescribed payments, and proceedings for contempt were begun to compel such payments, whereupon the petitioner sued out this writ of prohibition to restrain the respondents from proceeding further in the suit in equity—on the ground that equity is without jurisdiction of such a case. The Circuit Judge filed a statement to the effect that he had no answer to make to the writ. The other respondent demurred generally.

Three questions were raised and argued: (1) Has equity jurisdiction to grant permanent alimony or maintenance independently of proceedings for divorce or separation? (2) If so, has it jurisdiction to grant alimony *pendente lite*, &c.? (3) If so, is an order for such temporary alimony, &c., appealable?

The first of these questions, which is the main question, is one of considerable difficulty—not so much because of doubt as to what is or is generally considered the better doctrine at the present time or as to what is generally agreed to have been the former rule in England, whence we derive our system of equity for the most part, as because of the conflict between the modern view and the old rule and the question as to what our duty is under such circumstances.

Both at common law and under our statute (Civ. L., § 1890)
a husband is in general bound to support his wife in the style
in which he supports himself.	The remedy at law for a neglect
of this duty is for the wife to purchase necessaries on her hus-
band's credit and then for those who furnish such necessaries
to sue the husband for their reasonable value.	In order to re-
cover they must prove not only the reasonable value of the goods
but also that the goods were necessary and that the wife was
justified in living apart from her husband.	There is no remedy
at law for enforcing this right of the wife to support directly
through an action by herself against the husband, and her
chances of obtaining such support depend upon the degree of
success she might have in attempting to persuade third parties
to furnish goods, in the face, perhaps, of a notice from the hus-
band not to do so except at their peril, and in the face of the
probability, if not certainty, of being able to collect, if at all,
only through a law suit which might cost in attorney's fees more
than the amount, if any, recovered, which might, besides the
annoyance of litigation, involve the disagreeableness of engag-
ing in family troubles, and which might, after all, prove unsuc-
cessful because of inability to prove the requisite fault on the
part of the husband and merit on the part of the wife and that
the goods furnished were necessary and appropriate, and as
many suits have to be brought as there are persons who furnish
necessaries.	This remedy can hardly be called adequate.

Accordingly many American courts take the view that equity
may entertain an independent suit for alimony or maintenance—
basing the jurisdiction mainly on the grounds of inadequacy of
the remedy at law and the prevention of a multiplicity of suits.
See *Pearce v. Pearce*, 31 So. (Ala.) 85; *Galland v. Galland*,
38 Cal. 265; *Hardy v. Hardy*, 97 Cal. 125; *Daniels v. Daniels*,
9 Col. 133; *Hanscom v. Hanscom*, 6 Col. App. 97; *Dye v. Dye*,
9 Col. App. 320; *Graves v. Graves*, 36 Ia. 310; *Farber
v. Farber*, 64 Ia. 362; *Simpson v Simpson*, 91 Ia. 235; *Butler
v. Butler*, 4 Litt. (Ky.) 202; *Steele v. Steele*, 29 S. W. (Ky.)
17; *Helms v. Franciscus*, 2 Bland's Ch. (Md.) 544 (20 Am. Dec.
402); *Barber v. Barber*, 21 How. U. S. (on Md. law) 582;

*Garland v. Garland*, 50 Miss. 694; *M'Farland v. M'Farland*, 64 Miss. 499 (1 So. 509); *Edgerton v. Edgerton*, 12 Mont. 122 (29 Pac. 996); *Earle v. Earle*, 27 Neb. 227 (43 N. W. 118); *Cochran v. Cochran*, 42 Neb. 612 (60 N. W. 942); *Spiller v. Spiller*, 1 Hayw. (N. C.) 482; *Hodges v. Hodges*, 82 N. C. 122; *Bueter v. Bueter*, 1 S. D. 94; *Prather v. Prather*, 4 Desaus. (S. C.) 33; *Rhame v. Rhame*, 1 McCord's Ch. (S. C.) 147 (16 Am. Dec. 597); *Smith v. Smith*, 51 S. C. 379 (29 S. E. 227); *Almond v. Almond*, 4 Rand. (Va.) 662 (15 Am. Dec. 781). In North Dakota, also, this doctrine is strongly favored although the jurisdiction there is supported by statute. *Bauer v. Bauer*, 2 N. D. 108. This view is said to be held in the District of Columbia also (2 Am. & Eng. Enc. L. 2nd Ed. 95) whose reports are not in our library.    Texas is often classed in this list on the strength of *Walker v. Stringfellow*, 30 Tex. 573, but that case does not go so far, and the contrary view receives support in *Trevino v. Trevino*, 63 Tex. 650.    Ohio and Tennessee likewise are sometimes placed in this category, but apparently the decisions in those states were based on statutes. *Cox v. Cox*, 19 Oh. St. 502; *Richardson v. Wilson*, 8 Yerg. 67.    This view is said to obtain in the British colonies of Jamaica and Barbadoes also. 1 Bish., M., D. & Sep. § 1399.    In several of the states mentioned, e. g., California, Maryland and North Carolina, statutes in support of the jurisdiction have been enacted since the courts first held that such jurisdiction existed independently of statute.

The contrary view, denying jurisdiction, is supported by the English and many American cases.    See *Ball v. Montgomery*, 2 Ves. Jr. 190; *Wood v. Wood*, 15 S. W. (Ark.) 459; *Ross v. Ross*, 69 Ill. 569; *Trotter v. Trotter*, 77 Ill. 510; *Johnson v. Johnson*, 125 Ill. 510; *Fischli v. Fischli*, 1 Blf. (Ind.) 360; *Chapman v. Chapman*, 13 Ind. 397; *Moon v. Baum*, 58 Ind. 194; *Shannon v. Shannon*, 2 Gray (Mass.) 285; *Adams v. Adams*, 100 Mass. 365; *Peltier v. Peltier*, Harr. Ch. (Mich.) 19; *Perkins v. Perkins*, 16 Mich. 162; *Doyle v. Doyle*, 26 Mo. 545; *Parsons v. Parsons*, 9 N. H. 309; *Lynde v. Lynde*, 54 N. J. Eq. 476; *Ramsden v. Ramsden*, 91 N. Y. 281.    Georgia

also is often cited as holding this view, though we have not been able to verify this. The same is said of Pennsylvania also but the case cited, *Rees v. Waters*, 9 Watts 90, does not seem to be exactly in point, so far as we can judge from the digest, the decision not being at hand. In Louisiana, which is also cited the same way, the court seemed to regard the statute as prohibiting the jurisdiction. *Carroll v. Carroll*, 42 La. An. 1071. The Maine cases cited to the same effect seem to be explainable by reference to the statute. See *Jones v. Jones*, 18 Me. 308; *Henderson v. Henderson*, 64 Me. 419. In all, or nearly all, of the states cited above as supporting the view denying jurisdiction, as well as in many other states and Ontario and Manitoba, such jurisdiction seems now to be conferred by statute. See 2 Am. & Eng. Enc. L. 2nd Ed. 95; Stim. Am. St. L. § 6351; 2 Nelson, Div. & Sep. 962, 965; 1 Bish. M., D. & Sep. § 1399; and when so conferred is liberally construed. *Harding v. Harding*, 144 Ill. 588; *Bucknam v. Bucknam*, 176 Mass. 229; *Wood v. Wood*, 15 S. W. (Ark.) 459. Several of the decisions cited, e. g., all but one of those in Illinois supported the jurisdiction under statutory authority, the court stating however that the jurisdiction did not exist except by statute. Several denying the jurisdiction, e. g., in Massachusetts and New York, were influenced largely by local statutory provisions and historical considerations, and indeed are hardly in point, for they were not cases of this kind, and did not purport to decide the law in cases of this kind. In most, the question was first decided at an early date, before the change in the status of married women, and with little if any consideration on principle. In most of the states which support the jurisdiction, the question has been considered much more fully from the standpoint of principle as well as that of authority. It is evident both from the decisions and from the statutes as a whole that the jurisdiction is now generally regarded as one that should be upheld—unless the court is bound by the old English rule. The text books are much the same way. Some text-writers, especially the earlier ones, follow the old rule. But even when the weight of authority seemed to support that rule, Judge Story, in his work on Equity Jurispru-

dence, § 1423a said, with reference to the broader American rule that had already begun to gain headway, "there is so much good sense and reason in this doctrine, that it might be wished it were more generally adopted." Many of the more recent writers support the jurisdiction though as a rule they do not go into the question to any great extent. The two views have found their most vigorous advocates, among recent text-writers, in Bishop and Nelson, who discuss the question at considerable length, the former (1 M., D. and Sep., Ch. XLV) supporting the old and the latter (2 Div. & Sep. § 1000 *et seq.*) the prevailing present view.

We need not restate all the arguments *pro* and *con.* The weight of authority at the present time as well as principle favoring, in our opinion, the jurisdiction, the question is whether we are bound to follow the old English rule. There are no former Hawaiian decisions on the question, so far as we are aware, with the exception of a recent one by a Circuit Judge supporting the jurisdiction, which was not appealed from. The question of our duty must therefore depend largely upon the construction of our statutes. There are three statutes principally to be considered on this point.

First, there is the Act of 1876 defining the jurisdiction in equity. Civ. L., §§ 1497-1501. Sec. 1498 provides that certain courts "may hear and determine in equity, all cases hereinafter mentioned, when the parties have not a plain, adequate and complete remedy at the common law, that is to say: * * * (enumerating many classes of cases) and shall have full equity jurisdiction, according to the usage and practice of courts of equity in all other cases where there is not a plain, adequate and complete remedy at law." This statute would at first impression seem clearly to confer jurisdiction in this case, if we assume that the remedy at law is inadequate. And even if we should determine the question of the adequacy of the remedy at law by reference to the weight of judicial authority and "the usage and practice of courts of equity" rather than by reference to the plain fact, it is clear that we should have to come to the same conclusion in view of all the decisions at the present time. There

is nothing in this statute that requires the "usage and practice of courts of equity" to be ascertained by reference to the authorities at any particular point of time in the past or in England to the exclusion of the United States.

But this statute was copied from a like statute in Massachusetts (Mass. Gen. St., Ch. 113) and, assuming as is generally done, that the jurisdiction is denied in that state, (there is no doubt that it would be if it has not already been denied) in the absence of an express statute conferring it, the question suggests itself, whether we are not bound by the rule that when a statute is adopted from another state, the construction placed upon it by the courts of that state prior to such adoption is also adopted. And yet this rule does not apply here, first, because the Massachusetts cases above cited as denying jurisdiction, aside from the fact that they are not strictly in point on the question of jurisdiction in this class of cases, did not turn on the construction of the equity statute but were based chiefly on other statutory and historical grounds, and, secondly, because, in view of similar grounds, which do not apply here, the equity statute is construed in that state as an additional grant of equity jurisdiction to the courts of common law, and the exception of cases in which there is a "plain, adequate and complete remedy at the common law" is construed as referring to remedies at law as they exist under the statutes as well as to remedies as they exist at common law strictly speaking, with the result that, contrary to the general rule, equity is held not to have jurisdiction, even though it originally had it in England, if an adequate remedy is provided by statute (*Jones v. Newhall*, 115 Mass. 244), while the statute has already been construed differently here—as being a declaration of previously existing general equity jurisdiction, which is not ousted by the fact that other statutory as distinguished from common law remedies exist. *Haw. Com. & Sug. Co. v. Waikapu Sug. Co.*, 8 Haw. 449; *Wailuku Sug. Co. v. Cornwell*, 10 Haw. 476.

Another statute to be construed is that of 1892 (Civ. L., § 1109) by which "the common law of England, as ascertained by English and American decisions, is hereby declared to be the

common law of the Hawaiian Islands in all" except certain cases.

It is contended, however, that this statute has no application because this is a case in equity and not at common law. We need not decide this question, for, in view of our conclusion, we may assume for the purposes of this case that equity is included in the common law within the meaning of this statute.

One of the exceptions named in the statute is that the common law shall not apply when it is "otherwise expressly provided by the Hawaiian * * * laws." We have just held that the statute that confers jurisdiction "according to the usage and practice of courts of equity" does not require such usage and practice to be ascertained by reference to decisions at any particular period of time in the past or in England to the exclusion of the United States. Is not this, therefore, a case in which it is "otherwise expressly provided by Hawaiian laws" within the meaning of the exception named in the statute adopting the common law? There is much reason to believe that it is. But, assuming that it is not, still we are not bound by the old English rule for the following reasons.

The common law consists of principles and not of set rules. It therefore admits of different applications under different conditions. Moreover, by the terms of our statute it is to be ascertained by American as well as by English decisions. In *Morgan v. King*, 30 Barb. 9, the court, in construing a somewhat similar statute, said (at p. 13): "The adoption of the common law, in the most general terms, by the government of any country, would not necessarily require or admit of an unqualified application of all its rules, without regard to local circumstances, however well settled and generally received those rules might be. Its rules are modified upon its own principles, not in violation of them" and (at p. 14) "when it is said that we have in this country adopted the common law of England, it is not meant that we have adopted any mere formal rules, or any written code, or the mere verbiage in which the common law is expressed. It is aptly termed the *unwritten law* of England; and we have adopted it as a constantly improving *science*, rather than as an *art;* as a system of *legal logic*, rather than as a *code*

36—D

of *rules*. In short, in adopting the common law, we have adopted its fundamental principles and modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than by the mere words in which they are expressed." See also Bouvier, Tit. Com. Law. In *Sayward v. Carlson*, 1 Wash. St. 29, in construing a similar statute, the court said (at p. 40): "But we do not subscribe to the next proposition, that resort can be had only to the decisions of English courts, or to those of American courts which have followed them, to ascertain what the common law of England is or was, unless the English decisions commend themselves to reason, or have been so long and generally followed that to depart from them would tend to unsettle what has, by 'immemorial and universal usage,' been understood to be settled. The common law grew with society, not ahead of it. As society became more complex, and new demands were made upon the law by reason of new circumstances, the courts originally, in England, out of the storehouse of reason and good sense, declared the 'common law.' But since courts have had an existence in America they have never hesitated to take upon themselves the responsibility of saying what is the common law, notwithstanding current English decisions, especially upon questions involving new conditions. Therefore, we have the 'common law' as declared by the highest courts of this, that and the other state, and by the courts of the United States, sometimes varying in each. And we understand, by § 1 of the code, that where there are no governing provisions of the written laws, the courts of the late territory, and of this state, are, in all matters coming before them, to endeavor to administer justice according to the promptings of reason and common sense, which are the cardinal principles of the common law; but not that the decisions of the English courts are to be taken blindly and without inquiry as to their reasoning or application to the circumstances."

The common law has been adopted by constitutional or statutory provision or judicial decision in nearly all of the United States. It had been expressly adopted by constitution or statute in many of the states in which the courts hold that equity has

jurisdiction in cases of this kind independently of statute, before
such decisions were made, and yet, although the statute does not
appear to have been expressly referred to in such decisions, the
courts were undoubtedly aware of it and recognized their gen-
eral duty to follow the common law and justified their departure
from the English rule in this particular class of cases because
of a change of circumstances. We need not consider at length
all the changes in circumstances that have been considered as
warranting a change in the application of principles of law in
such cases. Considerable stress has been laid on the change in
the status of married women and on the fact that we have no
ecclesiastical courts which formerly in England had jurisdiction
of questions of divorce and most other matrimonial matters. The
reasoning that has been advanced in respect to these two changes
in conditions, if viewed from the standpoint of strict logic, is not
altogether satisfactory on either side of the controversy. But
when we consider generally how much the English court of
equity was influenced both by the then prevailing views as to
the status of married women and by their reluctance to encroach
upon the jurisdiction of the ecclesiastical courts in matrimonial
matters, and that notwithstanding such reluctance they did in
various ways, when they could find a reasonable excuse, assist
married women when their husbands violated their duty to sup-
port them, and that the ecclesiastical courts themselves furnished
relief in some ways no longer available, and that during the time
of the commonwealth, when the ecclesiastical courts were abolish-
ed, equity did exercise jurisdiction in this class of cases, though
as it is said, by express commission, and that it is not altogether
certain that they did not do so in some cases at an earlier period,
it is not unreasonable to suppose that they would have held the
modern view under similar circumstances under the general rule
that equity will act when there is not an adequate remedy at law,
and that at least, considering the changes in circumstances and
conditions, courts are now justified in applying that general prin-
ciple rather than the old view as to its particular application. At
any rate, in view of the American decisions as a whole as they
have been made, we are not required, if we are permitted, by

our statute in regard to the common law to follow the old rule.

The third statute to be considered is that in reference to divorce and separation which provides for alimony also. Civ. L., Ch. 125. Are these provisions exclusive? So far as the statute relating to divorce is concerned there is no difficulty. Similar statutes are found in all or nearly all of the states that hold that equity has jurisdiction and are expressly held in many of them not to prevent such jurisdiction. To hold that a statute of divorce, even though it provides for alimony incidentally, prevents the equity jurisdiction, would be to encourage applications for divorce by wives who need assistance, to open the way for husbands, who desire divorces but have no grounds for obtaining them, to force their wives to apply for them; and at the same time to deny wives adequate remedies, because they would have to wait under most statutes some time before they could apply for or obtain a divorce and their husbands might meanwhile by disposing of their property put it out of their wives' power to obtain alimony, and the remedy through divorce would often be altogether beyond the remedy desired or needed.

The statute of separation offers greater difficulty. For that seems to cover almost the same ground that equity is held to cover in this respect, although even the relief by separation, by determining the status, might often exceed the relief desired.

The separation law cannot be regarded as preventing the equity jurisdiction merely on the ground that it provides an adequate remedy at law, for it is a general principle, often followed by this court, that if equity jurisdiction exists in the absence of a statutory remedy at law, it is not taken away by the grant of such a remedy. The jurisdiction in equity does not cease and revive from time to time with the enactment and repeal of statutes which confer a remedy at law. Nor does the separation statute necessarily prevent the equity jurisdiction under the rule, *expressio unius est exclusio alterius*, that is, on the ground that the statute relating to the subject of divorce and separation, which provides for alimony also, was intended to be complete and exhaustive on those subjects; for, although there may be much force in this argument, still in that statute the

legislature acted primarily on the subjects of divorce and separation and dealt with the subject of alimony only in so far as it was incidental to those subjects. It did not purport to cover the subject of alimony wholly or at all as an independent subject, and, as remarked above, the remedy through judicial separation, like that by divorce, though not in the same degree, may often, by reason of determining a status, exceed the remedy desired or needed. There are statutes of separation in some of the states where equity is held to have jurisdiction as well as in states where the contrary is held, but, although such statutes have been alluded to in several decisions on this question, we know of no decision on either side of the question which has turned on the existence or non-existence of such a statute. And so far as this argument is concerned, that is, that the statute of separation was intended to be exclusive, as distinguished from the argument that it affords an adequate remedy at law, it would apply also, if not with equal cogency, in regard to the statute of divorce, which, as we have seen, is held not to prevent the equity jurisdiction.

Our conclusion on the first question is therefore that equity may in a proper case grant maintenance independently of express statutory authority and that there is nothing in our statutes to the contrary.

The second question presented in this case is whether, assuming that the jurisdiction exists to grant permanent alimony, temporary alimony, &c., also may be granted. On principle this question must be answered in the affirmative and the authorities appear to be practically unanimous to the same effect. This is conceded by even those writers and courts which hold that equity has no jurisdiction to grant permanent alimony except under statutory authority. 1 Bish. M., D. & Sep., § 1411; *Harding v. Harding*, 144 Ill. 588; *Vreeland v. Vreeland*, 18 N. J. Eq. 43.

The third question presented is whether an order for alimony *pendente lite* is appealable. This depends upon whether the order is final or interlocutory within the meaning of the law of appeals, and, if final, whether there is anything in the nature of the order that requires it to be excepted from the general rule.

If it were interlocutory it would be appealable in the discretion of the Circuit Judge (Act 40, Laws of 1898), but he has not attempted to exercise such discretion in this case. If it is final, an appeal lies as matter of right. *Id.* The statute does not expressly confine appeals to *final* judgments, orders and decrees, but it has been so construed by this court in numerous cases. And yet this court has also recognized that a *final* decision for the purpose of appeal is not necessarily the last decision in the case and that its nature or effect rather than the stage at which it is rendered is the true test. *Barthrop v. Kona Coffee Co.,* 10 Haw. 398. Whether a decree or order for temporary alimony is appealable is a question upon which there is some difference of opinion. The following cases are cited as holding that it is not appealable: *Call v. Call,* 65 Me. 407; *Aspinwall v. Aspinwall,* 25 N. W. (Neb.) 623; *Lapham v. Lapham,* 40 Mich. 527; *Cooper v. Mayhew,* Id. 528; *Webber v. Webber,* 79 N. C. 572; *Gordon v. Gordon,* 88 N. C. 45; *Taylor v. Taylor,* 25 Oh. St. 71; *Collins v. Collins,* 71 N. Y. 269; *Earls v. Earls,* 26 Kan. 178. But in several of these cases appeals seem to have been entertained, the court merely holding that the amount of alimony was within the discretion of the trial judge and that the appellate court could not interfere with the exercise of that discretion—except, we presume, in case of abuse. It is doubtful how far others of these cases depended on special statutory provisions. In none of these cases is the question considered at length. Two reasons are given in support of such rulings—one, that the decree is interlocutory, the other that the statutory provision for temporary alimony, designed, as it is, to meet an immediate need, indicates a legislative intention that the general statue relating to appeals should not apply. The answer to the first of these reasons is that the decree or order is final in its nature, though it is not the last decree in the case or even the decree that determines the merits of the main case. It is independent of the main case in that the final decree in the main case cannot affect it and that it in no way depends on the ultimate result or the merits of the main case. It is a money decree enforceable immediately by execution or other process and the effect of which

is to divest the husband of his property. The answers given to the other reason are that, although the provision for temporary alimony is designed to supply immediate needs, the allowance of an appeal would at most merely delay the litigation until the propriety of the order for temporary alimony could be determined by the appellate court, and that the temporary inconvenience of the wife is not a sufficient reason for withholding from the husband a legal right. We may add that the argument against appealability in so far as it rests on the legislative intention assumed to be manifested by statutory provisions for temporary alimony in divorce and separation statutes, have no appli cation to this case for the reason that here the alimony is granted under the general equity powers of the court and not under any statute. Accordingly, orders for temporary alimony, even when made in pursuance of statutes, are held appealable by the great majority of courts, the question having been considered at length in many of the cases. *McKennon v. McKennon*, 10 Okl. 400; *Blake v. Blake*, 80 Ill. 523; *State v. Seddon*, 93 Mo. 520; *Daniels v. Daniels*, 9 Colo. 133; *Sharon v. Sharon*, 67 Cal. 185; *In re Finkelstein*, 34 Pac. (Mont.) 847; *Gruhe v. Gruhe*, 123 Ind. 87; *Leslie v. Leslie*, 6 Abb. Pr. H. S. 193; *Blair v. Blair*, 74 Ia. 311; *Williams v. Williams*, 29 Wis. 517, and other cases, in the same and other states, cited in these cases. In our opinion the order is a final one for the purposes of appeal under the statute and we cannot make law by creating an exception to the statute.

It does not seem to be disputed that, if the order for temporary alimony is appealable, prohibition lies to prevent its enforcement by contempt proceedings pending the appeal which is alleged to have been taken. We presume also that, although the prayer is for a writ against further proceedings in the cause, that is, the whole cause, we may issue it to the extent required though it be to only one branch of the cause. *State v. White*, 24 So. (Fla.) 160. Nor has any question been raised as to the propriety of issuing the writ against the contempt proceedings, although as a rule prohibition is not granted untl the question of jurisdiction has been raised without suc-

cess in the lower court, which was not the case here. But that rule is one of practice rather than of jurisdiction. *Bavemeyer v. Superior Court*, 84 Cal. 327, 403. And several exceptions to its application is recognized. One of these is that it does not apply in summary proceedings of a quasi- criminal character, such as proceedings for contempt, the result of which may be fine or imprisonment before the writ could be applied for and issued if it could not issue until after objection is made to the jurisdiction in the court below. See *People v. Carrington*, 5 Utah 531; *State v. Wilcox*, 24 Minn. 143.

Accordingly, the writ will be made absolute as to further proceedings in the contempt matter but dissolved as to further prcoceedings in the main cause.

*Holmes & Stanley* for petitioner.

*Humphreys, Thompson & Watson* for respondent, Eleanor G. Dole.

### CONCURRING OPINION OF PERRY, J.

I concur, save only as to the reason for holding that §1109 of the Civil Laws does not preclude the adoption in this Territory of the view that equity has jurisdiction of suits for separate maintenance. As to the correctness of the reasoning of the Chief Justice on this point I express no opinion.

The Act of 1878 declares that our courts "shall have full equity jurisdiction *according to the usage and practice of courts of equity* in all other cases where there is not a plain, adequate and complete remedy at law." As stated in the opinion of the Chief Justice, there is nothing in that statute that requires the "usage and practice of courts of equity" to be ascertained by reference to the authorities in England to the exclusion of those in the United States, in other words, nothing limiting the "courts of equity," whose practice is to be ascertained, to those of England to the exclusion of those of the United States. On the contrary, the correct construction of that statute is, and the intention of the legislature that enacted it was, in my opinion, that the courts whose power was being

declared should be at liberty, in determining their jurisdiction in equity, to follow the usage and practice of the courts in the United States as well as that obtaining in England. After a study of the usage and practice of the courts of equity of both of those countries, and without regard to the provisions of section 1109, we find, as held in the leading opinion, that the better view is that courts of equity have the jurisdiction in question, that is to say, that the statute of 1878 gave to our courts of equity or declared them to have, such jurisdiction. Now, assuming that equity is included in the common law within the meaning of section 1109 and that at the common law courts of equity did not have that jurisdiction, then the Act of 1878 made a different provision, the case falls within the express exception, "as otherwise expressly provided by the Hawaiian * * * laws," and, for this reason, the section itself does not apply.

### OPINION OF GALBRAITH, J.

I concur with the conclusion of the Chief Justice in so far as it is held that equity had jurisdiction of the suit and that the court had the authority to make the order for alimony *pedente lite* but cannot agree that that order is appealable or that the writ of prohibition in this case should be made absolute to any extent.

It is true that the order granting the allowance to the wife is made under the general equity powers of the court but the appeal, if any, is taken under our statute. Sec. 1433 C. L. as amended by Act 40, Session Laws, 1898, reads in part: "Appeals shall be allowed from all decisions, judgments, orders or decrees of Circuit Judges in Chambers, to the Supreme Court, * * * whenever the party appealing shall file notice of his appeal within five days, and shall pay the costs accrued and deposit a sufficient bond in the sum of fifty dollars conditioned for the payment of the costs further to accrue in case he is defeated in the appelate court, or money to the same amount, within ten days after the filing of the decision,

judgment, order or decree appealed from" \* \* \* Filing
notice of appeal, paying court costs and filing bond for
$50.00, or depositing that sum in cash with the clerk to cover
costs in the Supreme Court, if the decision should be adverse to
appellant, acts as a stay of proceeding without filing the
supercedeas bond required in most jurisdictions, unless the
judge for good cause shown should order execution to issue
notwithstanding the appeal, as he may do in certain specified
cases. Sec. 1435 C. L.

The above statute on appeals has been construed to permit
appeals only from "final" decisions, judgments, orders or de-
crees. *Barthrop v. Kona Coffee Co.*, 10 Haw. 398. In that
case the court held that an order overruling a demurrer to a
bill in equity was interlocutory and not a "final" order or de-
cision and was not appealable.

In discussing the question, Mr. Justice Frear, speaking
for the court, said: "If appeals were allowed from all such
rulings it would be in the power of a defendant, even in a very
clear case against him, to keep the case oscillating between the
original and appellate courts almost indefinitely, to the great
expense and annoyance and perhaps even practical denial of
justice to the plaintiff, to say nothing of the annoyance to the
courts and the occupation of their time with trivial matters.
\* \* \* \* Our statute is such that we cannot discrim-
inate between interlocutory decisions so as to allow appeals on
important occasions and not on other occasions," p. 401.

The force of this decision is recognized by the majority but
it is sought to avoid it by holding that the order made allowing
temporary alimony and counsel fees *pedente lite* is a final order
on the ground that it finally disposes of the matter to which it
refers. Is it any more final than the order overruling a demurrer
or does it any more finally and permanently dispose of the matter
raised than the decision on a demurrer? Clearly not.

An interlocutory order is defined "to be one made between
the commencement and end of a suit or action which decides
some point or matter, which, however, is not a final decision of
the matter in issue," *Bouvier*. The "matter in issue" in this

case was the power of the court below to compel the husband to support his wife while living apart from him and induced to so live by his wrongful conduct. The order allowing alimony *pedente lite* and counsel fees was made between the "commencement and end of the suit," was an incident thereto and did not dispose of the "matter in issue" in the cause. Nor was it a final order in the sense that the court could not modify, or revoke it, on application, at any subsequent time. It was clearly an interlocutory order or decision and not appealable under our statute.

The cases cited in the majority opinion to sustain the conclusion that the order is final and appealable base such holding principally on the grounds that the judgment is a money judgment and that to deny an appeal would be to authorize the taking of the husband's property without the right of review and that "property rights" are of such a sacred nature that property must not be passed from the husband to the wife at the discretion of one Judge however great or good he may be. *Blake v. Blake,* 80 Ill. 523; *McKennon v. McKennon,* 10 Okla. 400. These cases overlook the very important point that the statute, and the common law in the absence of statute, imposes the duty on the husband, by reason of the marriage relation, when he has turned his wife adrift and without fault on her part compels her to live separate and apart from him, to supply her with necessaries, and if he fails to do this and she is compelled to sue for them in the courts then he is liable for her reasonable counsel fees. These are "legal rights" conferred on the wronged wife by law. Temporary support is allowable to meet the "immediate necessities of the wife" (*Call v. Call,* 65 Me. 407). It seems to me that these rights given the wife are equally sacred and entitled to the protection of the courts with the property rights of the husband and should not be permitted to be frittered away by appeal. The Circuit Judge in making the order merely announced the judgment of the law on the facts.

It is also claimed that an appeal ought to be allowed for the reason that the husband could not "get the money back" if the order should be found to have been wrongfully made. Where,

as in this case, the marriage is admitted, and the allegations of the bill confessed by demurrer, the obligation to support the wife is fixed on the husband by law and there does not seem to be any possible circumstances under which he would be entitled to recover the amount of the allowance if paid. The only thing he can or could have to complain of on appeal is as to the reasonableness of the allowance. The error in this, if any, could be reviewed and corrected on the appeal from the final decree in the cause without injury or impairment of the rights of either party. There is no claim made on behalf of the husband that the allowance made by the Circuit Judge was unreasonable or excessive. The husband's salary is $375 per month. The allowance to the wife was $150 per month and $250 as her counsel fees.

If our statute on appeals was similar to that in California, Montana, Oklahoma and possibly Colorado and Illinois in the requirement that the husband should file a supercedas bond conditioned to pay the allowance if affirmed by appellate court, the cases cited from those jurisdictions in support of the conclusion of the majority would have much greater force. The single reason that the husband under our statute can appeal, if at all, without paying or securing the amount of the allowance even if approved by appellate court ought to be absolutely controlling and impel the court to deny an appeal where one is not clearly allowed by statute. The denying an appeal in this case does not withhold from the husband a "legal right" for the reason that he has no right to an appeal if none is given by statute, while the wife under the facts alleged in the bill and admitted by the demurrer has a "legal right" to expenses and support given by the statute which may be denied her altogether by allowing the appeal. To "make law" by construing the statute to allow an appeal in this case is to place it in the power of the husband, as has been so well said, "to keep the case oscillating between the original and appellate courts almost indefinitely, to the great expense and annoyance and perhaps even practical denial of justice to the plaintiff" and will also permit a husband who wants to void

his marital obligations and to turn his wife over to the tender charities of her friends to do so completely. Pending the appeal he may give away his property or send it out of the territory or he may remove himself from the jurisdiction and leave his wronged life partner with her order for alimony *pendente lite* and expense money, affirmed by the appellate court and with no means of enforcing the same.

It seems clear to me that the court ought not to make the writ absolute in any particular. To do so it is necessary to go altogether beyond the prayer of the petition for the writ. The prayer reads "Wherefore your petitioner prays that a writ of prohibition may be issued out of this Honorable Court addressed to the said Honorable George D. Gear, Second Judge of the Circuit Court of the First Circuit, ordering and forbidding him to take cognizance of *the said cause,* and to the said Eleanor G. Dole forbidding her and her attorneys or any one on her behalf from prosecuting the said cause before the said Honorable George D. Gear, Second Judge as aforesaid, or any Judge of said Court, until the further order of this Court." The prayer only asks for the writ against proceeding in "said cause." "Said cause" is the suit for maintenance, the principal cause of action, not the incidental order allowing temporary alimony and counsel fees. The court finds that the petitioner is not entitled to the writ in "said cause" but gives something not asked for by making the writ absolute as to an incidental matter.

There is no doubt that the court below was proceeding in the contempt matter on the theory that no appeal could be taken from the order allowing temporary alimony and I submit that under the law it was justified in so proceeding. Since the majority has declared that it was proceeding on a wrong theory and that an appeal lies from the order there is no suggestion that the Circuit Judge will refuse to acknowledge and follow the law as so declared and that it would hold a return filed by the respondent that he had perfected an appeal from said order as a sufficient showing for failure to comply therewith and order his discharge.

Making the writ absolute in any particular is entirely uncalled

for and is unauthorized by any of the authorities cited in the opinion and it is dignifying the trivial allowance of one hundred and fifty dollars and two hundred and fifty dollars by the use of a "prerogative writ" where the ordinary proceeding of appeal gives perfect protection to every right the respondent can have in the premises.

The order ought to be discharged and the writ dismissed.